

**FILED**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

*11:42 am, 3/10/22*

**Margaret Botkins
Clerk of Court**

| | |
|---|---|
| JASON FICCA and CARMEN OCHOA, | |
| Plaintiffs, | |
| VS. | Case No.  21-CV-113-J |
| LARAMIE COUNTY COMMUNITY COLLEGE DISTRICT et al. | |
| Defendant, | |

## ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT—ECF No. 19

THIS MATTER comes before the court on Plaintiffs' *Motion for Partial Summary Judgment*, ECF No. 19. The court also held a hearing on this motion on February 9, 2022. ECF No. 35. Having considered the filings, applicable law, and being otherwise fully advised, the court finds Plaintiffs' *Motion for Partial Summary Judgment—ECF No. 19—*should be **DENIED**.

## BACKGROUND

Plaintiff Jason Ficca ("Plaintiff Ficca") began his job as the Laramie County Community College ("LCCC") head basketball coach in 2007. ECF No. 20-2. Defendants terminated Plaintiff Ficca in 2020. ECF No. 1 at 7–8. Plaintiff Ficca and his wife ("Plaintiffs") sue arguing his termination violated due process, his employment contract, and a duty of good faith and fair

dealing. ECF No. 1. Plaintiffs also bring claims for promissory estoppel, injunctive relief, and loss of consortium. ECF No. 1 at 11.

In 2014, LCCC implemented personnel policies distinguishing between "at will" and "legacy" employees. ECF No. 20-5. Legacy employees were those who were hired before 2014 and they could only be removed for cause. ECF No. 24-1; ECF No. 1 at 4.. LCCC defined "for cause" as follows: "Reasons for which an employee may be terminated including, but not limited to misconduct, incompetency, insubordination, and/or neglect of duty."[1] ECF No. 24-2. Because Plaintiff Ficca was hired before 2014, he was a legacy employee and could only be terminated for cause. ECF No. 1.

LCCC also had policies outlining a general disciplinary schedule ("disciplinary policy"). ECF No. 20-4. Under the disciplinary policy, supervisors could provide an employee with a (1)

---

[1] The policy defined misconduct, incompetency, insubordination, and neglect of duty as follows:

    A.  Misconduct-Conduct or behavior including, but not limited to: conduct which violates federal, state, or local law; conduct that violates LCCC policy, procedure, rules, directions or guidelines; the use of, or demonstrating the effects of the use of alcohol or illegal drugs/narcotics in the course of performing assigned duties; participation in activities which interfere with the normal operation of LCCC; activities or conduct which may endanger the health or safety of self, employees, or students; unauthorized access, use or release of confidential information; misrepresentation; unauthorized use of LCCC property; misappropriation of LCCC property; breach of the employment contract; conviction of a violent misdemeanor; conviction of a felony or a crime of moral turpitude; dishonesty; fraud; falsifying records; theft of LCCC property; embezzlement; violence, threatened violence, harassment, threats or threatening behavior; improper use of computer and/or internet at work (e.g., watching pornography online); actions or behavior which result in injury to LCCC or its reputation; and/or any conduct or behavior which reflects poorly on LCCC.

    B.  Incompetency-When an employee is unable to or lacks the fitness to discharge one or more of his/her required duties.

    C.  Insubordination-An employee's refusal to obey a reasonable, proper direct order, including under certain circumstances even a single instance thereof.

    D.  Neglect of Duty-An employee's failure to satisfactorily perform one or more duties properly assigned to him or her.

ECF No. 24-2 at 1–2.

verbal warning; (2) written warning; and (3) Performance Improvement Plan ("PIP"). ECF No. 20-4 at 3. The disciplinary policy also contemplated instances in which an employee may be suspended pending full termination. ECF No. 20-4 at 3. Notably, the disciplinary policy said, "[d]iscipline may begin at *any* stage including termination depending on the nature of the infraction." ECF No. 20-4 at 2 (emphasis added). Also, "[i]f corrective and/or discipline actions [were] unsuccessful, or the problem or violation [wa]s so severe that corrective action [wa]s inappropriate or impractical, a supervisor may recommend termination of the employee from employment." ECF No. 20-4 at 4.

The disciplinary policy detailed the following termination procedure:

(1) If corrective and /or discipline actions are unsuccessful, or the problem or violation is so severe that corrective action is inappropriate or impractical, a supervisor may recommend termination of the employee from employment.

(2) The supervisor must inform the Human Resources department and his or her immediate supervisor of the termination recommendation. The supervisor shall also provide written documentation outlining the basis for the termination.

(3) The college will give written notice either by electronic means or via United States Mail to the employee of the recommended termination, reasons for the recommended termination and the projected termination date. However, in no event shall the projected termination date be earlier than forty-eight hours from the date of the notice.

(4) Notice is effective on the date the written documentation is sent. From the effective date of the notice of recommended termination until a written termination decision is sent, the employee shall be suspended in accordance with subsection B.4. herein.

(5) Within forty-eight hours of the notice of recommended termination, the College shall hold a pre-termination hearing. The employee must appear at the pre-termination hearing. Failure to do so shall constitute insubordination. Additionally, an employee's failure to attend the pre-termination hearing shall constitute a default and the College may proceed with the termination. An employee's lack of appearance at a pre-termination hearing does not affect in any way the employee's right to an administrative hearing post-termination.

(6) The employee may have one representative present at the pre-termination hearing, this shall not be cause to postpone the hearing.

(7) The employee's supervisor and a representative from the Human Resources office shall be present at the pre-termination hearing, at which time the employee will be given an opportunity to set forth why the termination shall not occur.

(8) Following the pre-termination hearing, the College will give written notice either by electronic means or via United States Mail to the employee of the College's decision to either:

    a. Continue the employee's employment, or
    b. Termination the employee.

(9) Notice is effective on the date the written documentation is sent. If the College's determination is to terminate the employee, the employee's termination if effective on the date the written documentation is sent to the employee.

ECF No. 20-4 at 4. Under the disciplinary policy, an employee could appeal any disciplinary action by submitting a request for appeal within seven "business days from the date the written disciplinary action." ECF No. 20-4 at 4.

On March 23, 2020, the LCCC Interim Athletic Director met with Plaintiff Ficca and informed him that his contract would not be renewed. Still LCCC said they would keep Plaintiff Ficca on paid, administrative leave for the rest of his contract. ECF No. 24-13. The Interim Athletic Director also provided Plaintiff Ficca with written notice that his contract would not be renewed after the 2019-2020 fiscal year. ECF No. 20-7 ("Please accept this letter as formal, written notice the College will not issue you a new employment contract after this Fiscal Year, 2019-2020 and conclude your employment accordingly."). In this notice, the Interim Athletic Director explained Plaintiff Ficca's contract was not going to be renewed because:

(1) There has been a three-year decline in Men's Basketball win/loss production. In 2019-2020, the record was 4-25, equating to a winning percentage of 13%. The team finished 7th place in Region IX North. In 2018-2019, the record was 12 – 19. This winning percentage of 38% resulted in a 4th place finish in Region IX North. The 2017-2018 season record was 17-14 which was a winning percentage of 54%.

(2) The 2019-2020 team is not in a position to win games as on average they lost games by almost 14 points (13.7 points per game). There has only been 1 Region IX Finals during 13 year head coach tenure.

4

      (3) The team Cumulative GPA has been at or near the bottom of the athletic department. The cumulative team GPA for Fall 2019 was 2.69. The previous year (2018-2019) the cumulative team GPA was 2.57.[2]

ECF No. 20-7 at 2. So, according to the notice, Plaintiff Ficca's "last day of employment w[ould] be June 30, 2020." ECF No. 20-7 at 2.

      On March 23, 2020, LCCC posted a press release naming Plaintiff Ficca's replacement.

      On March 24, 2020, Plaintiff Ficca cleaned out his office, and returned his LCCC issued cell phone, iPad, and laptop. ECF No. 20-12.

      On March 26, 2020, Plaintiff Ficca appealed, reminding Defendants that he was a legacy employee. ECF No. 24-17. In his appeal letter Plaintiff Ficca argued that Defendants did not follow the disciplinary policy and that they lacked cause to terminate him. ECF No. 24-17.

      On April 7, 2020, Defendants responded that on March 23, 2020, Plaintiff Ficca received notice of non-renewal. ECF No. 20-11. They explained that Plaintiff Ficca was a full-time employee through the end of his contract on June 30, 2020. ECF No. 20-11. So, Defendants said, Plaintiff Ficca would continue to receive his full compensation package through that time. ECF No. 20-11. Defendants also explained to Plaintiff Ficca that they would have his pre-termination hearing at some point before June 30, 2020. ECF No. 20-11.

---

[2] On the alleged reasons for Plaintiff Ficca's termination, the 2019-2020 LCCC Basketball team finished with the worst record in the history of the program. ECF No. 25-4 at 8. This made Plaintiff Ficca the coach for three of the five worst seasons the LCCC Basketball program had ever have. ECF No. 25-4 at 8.

In 2018 an evaluation of Plaintiff Ficca noted that Men's Basketball had the lowest GPA of all LCCC teams. ECF No. 25-8. And in that evaluation, the evaluator also noted that Plaintiff Ficca "need[ed] to invest more in his team's academic performance and strive to ensure no students lo[st] eligibility and this team as a whole attains 3.0 GPA." ECF No. 25-8 at 2. In 2019, another review noted that the team's GPA fell short of the 2.65 goal. ECF No. 25-9 (Noting that the team goal was for a GPA of greater than or equal to 2.65. But that the team average was 2.57). In a 2019-2020 mid-year evaluation, it was noted, again, that the basketball team was not meeting GPA expectations. ECF No. 25-10 ("The minimum expectation is a cumulative GPA of 3.0 for all teams. The men's basketball team had the lowest team GPA for the fall 2019 semester which was 2.69. . . The lack of academic performance by the men's basketball program is a consistent theme."). This 2019-2020 mid-year evaluation enumerated other criticisms of Plaintiff Ficca's performance as head coach. ECF No. 25-10.

On April 8, 2020, Defendants set a pre-termination hearing for no later than April 10, 2020. ECF No. 20-13. In the letter setting that date, the Interim Athletic Director again enumerated reasons for Plaintiff Ficca's termination. ECF No. 20-13.

On April 9, 2020, Plaintiff Ficca responded, arguing that he was entitled to a pre-termination hearing and, because Defendants had already made the decision to termination him, they did not follow LCCC procedure. ECF No. 20-12. Plaintiff Ficca accused Defendants of a post-error clean up. ECF No. 20-12. He said that because he returned all of his materials, cleaned out his office, and LCCC had named a replacement, it was unbelievable that LCCC would have a hearing and earnestly consider his retention. ECF No. 20-12.

Plaintiff Ficca did not attend his pre-termination hearing. ECF No. 20 at 7.

On April 17, 2020, LCCC issued Plaintiff Ficca a letter noting his absence from the pre-termination hearing. ECF No. 20-13. This letter detailed what happened at the pre-termination hearing despite Plaintiff Ficca's absence. ECF No. 20-13. The letter also, again, explained the reasons for Plaintiff Ficca's termination. ECF No. 20-13. LCCC then concluded the letter by saying that, under LCCC policy, Plaintiff Ficca was terminated effective April 17, 2020. ECF No. 20-13. In the letter, the LCCC President explained that "should [Plaintiff] disagree with [the President's] decision, [his] final recourse would be to utilize the contested case procedure outline in the College's *Rule of Practice for a Contested Case.*" ECF No. 20-13. Plaintiff Ficca did not request a contested case hearing. ECF No. 24-28 at 150–52.

## STANDARD OF REVIEW

This court must grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, this court will "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000).

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) showing that the nonmoving party's evidence cannot establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the movant satisfies its burden, then the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. To meet this burden, the nonmovant must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, he must "make a showing sufficient to establish the existence of [every] element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

In their motion Plaintiffs ask this court to make three findings as a matter of law: (1) Plaintiff Ficca was terminated on March 23, 2020, when he was informed his contract would not be renewed; (2) Plaintiff Ficca did not have to exhaust administrative procedures after March 23,

2020; and (3) Defendants as a matter of law had to follow their disciplinary policy and did not

here. ECF No. 20 at 1–2. This court addresses each of these requests in turn.

## I.       Defendants Did Not Terminate Plaintiff Ficca on March 23, 2020

Plaintiffs argue that Defendants terminated Plaintiff Ficca on March 23, 2020. ECF No.

20 at 11. To advance this argument, Plaintiffs cite a variety of discrimination cases—all

addressing when a statute of limitations period begins to run. ECF No. 20 at 11–12. These cases

offer the general proposition "the period for filing a discrimination charge begins on the date the

employee is notified of an adverse employment decision, even if the employee is later terminated

or subsequently receives severance benefits." *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613

(10th Cir. 1988). Applying this same logic here, Plaintiffs believe that this court should

recognize the date of termination notification as the same as the date of termination. ECF No. 20

at 12.

This court is not convinced. The issue here is not when the statute of limitations period

began to run. Instead, the issue is at what point Defendants deprived Plaintiff Ficca of a

significant property interest—here, Plaintiff Ficca's job. ECF No. 20 at 21 ("Ficca had a property

interest in his employment"). Said another way, the question is: when did Defendants fire

Plaintiff Ficca?

The Tenth Circuit has been clear on this issue. Nothing requires an employer "to hold a

hearing prior to the initial decision to terminate a position; rather, a hearing is required before

employees are *actually* deprived of their jobs." *Riggins v. Goodman*, 572 F.3d 1101, 1110 (10th

Cir. 2009) (emphasis added). So "due process is required not before the initial decision or

recommendation to terminate is made, but instead before the termination actually occurs." *Id.*

(citing *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir. 1988) ("Due process . . .

does not require predecision hearings. It only requires an opportunity to be heard prior to the

termination of benefits.")). Practically speaking this makes sense because supervisors have to

have the opportunity to make initial recommendations to terminate so that the termination

process can be set in motion. *See id.* Plus, the Tenth Circuit has recognized that "suspension *with*

pay does not raise due process concerns."[3] *Hicks v. City of Watonga, Okla*, 942 F.2d 737, 746 n.4

(10th Cir. 1991).

On March 23, 2020, the LCCC Interim Athletic Director met with Plaintiff Ficca and

informed him that his contract would not be renewed, but that he would be on paid,

administrative leave for the rest of his contract. ECF No. 24-13. That same day, the Interim

Athletic Director also provided Plaintiff Ficca with written notice that his contract would not be

renewed after the 2019-2020 fiscal year. ECF No. 20-7 ("Please accept this letter as formal,

written notice the College will not issue you a new employment contract after this Fiscal Year,

2019-2020 and conclude your employment accordingly."). So, according to that notice, Plaintiff

Ficca's "last day of employment w[ould] be June 30, 2020." ECF No. 20-7 at 2.

Because Plaintiff Ficca was not actually deprived of his job or any pay on March 23,

2020, no due process responsibilities were triggered at that time. Defendants were well within

their authority to recommend that Plaintiff Ficca be terminated. And giving Plaintiff notice of

that initial recommendation complied with LCCC policy which requires that LCCC "give written

notice either by electronic means or via United States Mail to the employee of the recommended

termination, reasons for the recommended termination and the projected termination date." ECF

No. 20-4 at 4. So this court finds that Defendants terminated Plaintiff on April 17, 2020, when

---

[3] As much as Plaintiffs argue that Defendants effectively terminated Plaintiff Ficca because they had him clean out his office and return various electronics, Plaintiffs have made no arguments that Plaintiff Ficca had a significant property interest in these electronics. And Plaintiffs do not direct this court to any caselaw supporting such an argument.

the LCCC President provided Plaintiff with a letter explaining that, because of Plaintiff's

absence at his pre-termination hearing, his termination was effective April 17, 2020. ECF No.

20-13.

## II.   Plaintiff Ficca Failed to Exhaust Administrative Procedures

Plaintiffs next argue Plaintiff Ficca did not have to follow LCCC's administrative

procedures because any compliance would have been futile. ECF No. 20 at 13. LCCC policy

specifies:

> Within forty-eight hours of the notice of recommended termination, the College
> shall hold a pre-termination hearing. The employee must appear at the pre-
> termination hearing. Failure to do so shall constitute insubordination. Additionally,
> an employee's failure to attend the pre-termination hearing shall constitute a default
> and the College may proceed with the termination. An employee's lack of
> appearance at a pre-termination hearing does not affect in any way the employee's
> right to an administrative hearing post-termination.

ECF No. 20-4.

On March 23, 2020, Defendants told Plaintiff Ficca that his "last day of employment

w[ould] be June 30, 2020." ECF No. 20-7 at 2. On March 26, 2020, Plaintiff Ficca appealed his

termination. ECF No. 24-17. On April 8, 2020, Defendants set a pre-termination hearing for

April 10, 2020. ECF No. 20-13. Plaintiff Ficca did not attend this pre-termination hearing. ECF

No. 20 at 7. On April 17, 2020, LCCC issued Plaintiff Ficca a letter noting his absence from the

pre-termination hearing. ECF No. 20-13. In this letter, LCCC also terminated Plaintiff Ficca.

ECF No. 20-13.

Plaintiffs argue that all of Defendants actions after March 23, 2020, were a charade to

mask the fact that they fired Plaintiff Ficca without due process. ECF No. 20 at 18. As explained

above, this court finds Defendants did not terminate Plaintiff Ficca on March 23, 2020.

10

Plaintiff Ficca did not appear at his pre-termination hearing on April 10, 2020. Under LCCC policy, failure to appear constitutes insubordination. ECF No. 20-4. So Plaintiff defaulted and LCCC could proceed with termination. ECF No. 20-4. Still, Plaintiff Ficca had a right to a post-termination administrative hearing. ECF No. 20-4. He failed to exercise that right as well. So, in sum, Plaintiff Ficca had the opportunity for two review hearings—pre- and post-termination—and he did not avail himself of either.

The parties do not apparently dispute that Plaintiff failed to exhaust these administrative remedies. Instead, the focused issue is whether this failure should bar his claims before this court or whether compliance would have been futile.

"[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969). Still there are various exceptions to this exhaustion requirement. *Id.* One of those exceptions is if there is an "improbability of obtaining adequate relief." *New Mexico Ass'n for []* *Citizens v. State of N.M.*, 678 F.2d 847, 850 (10th Cir. 1982). An exception also exists if administrative review would result in time delays which "would subject the substantive rights to irreparable harm." *Id.* And finally, a third exception exists when "administrative remedies would be futile, when they would fail to provide relief, or when an agency has adopted a policy or pursued a practice of generally applicability that is contrary to the law." *Gilmore v. Weatherford*, 694 F.3d 1160, 1169 (10th Cir. 2012).

Plaintiffs argue an exception excuses Plaintiff Ficca's failure to follow administrative procedures because even if he had, Defendants were not going to change their minds. ECF No. 20 at 17 ("[C]ompliance would have been futile as the decision to terminate the Plaintiff was a foregone conclusion and allowing the Defendants to postpone the Plaintiff's remedy would not

have served the principles and justifications underlying the administrative exhaustion

doctrine.").[4, 5] Plaintiffs explain that Defendants actions made it clear they had no intention of

bringing Plaintiff Ficca back. Defendants escorted Plaintiff Ficca off campus, forbad him from

returning without permission, had him return his electronics, and sent a press release announcing

his replacement. ECF No. 20 at 17. LCCC also tried to remove Plaintiff Ficca from the NCJAA's

system and used language which, according to Plaintiffs, suggested permanence. ECF No. 20 at

17.

But the futility exception "is a narrow one." *Gilmore*, 694 F.3d at 1169. To fit within it "a

plaintiff must show that resort to the administrative process would be *clearly useless*." *Id.*

(internal citation and quotation marks omitted). Said another way, "[i]n order to be entitled to the

futility exception, a plaintiff must show that the claim would be denied on appeal, and not merely

just that [the plaintiff] had doubts that an appeal will result in a different decision." *DeMoss v.*

*Matrix Absence Management, Inc.*, 438 F.App'x 650, 653–54 (10th Cir. 2011). This court finds

Plaintiffs have not shown that this exception applies here.

Plaintiff Ficca's return of various materials before his pre-termination hearing is

not sufficient evidence that Defendants would deny his appeal. Fair enough Plaintiff Ficca

left campus and had to return his keys, but during that time he received the benefits of an

employee on paid leave. So just as quickly as those items were taken from Plaintiff Ficca,

---

[4] As much as Plaintiffs argue the timeliness exception applies, they offer no argument on that basis. Instead, they merely say that postponement would not be fruitful. ECF No. 20 at 17. But that is not the standard. And conclusory statements that an exception applies are not enough. Because Plaintiffs do not offer a true argument that a delay would subject Plaintiff Ficca's substantive rights to irreparable harm, this court finds the timeliness exception does not apply.

[5] Plaintiffs cite the rules for the inadequate relief exception, but their argument can be best characterized as a futility argument. *See* ECF No. 20 at 17 ("To the extent that Defendants argue the Plaintiff was required to follow any procedures they could conjure, such compliance would have been futile as the decision to terminate the Plaintiff was a foregone conclusion"). For that reason, this court will address Plaintiffs' argument under the futility exception despite their failure to specifically name it.

this court believes they could be returned. For that reason, based on Plaintiffs' evidence, this court is not convinced that further review by Defendants at a pre-termination hearing *and* post-termination hearing would have been "clearly useless."

Plaintiffs next argue that excusal is warranted because Defendants did not follow their own procedures. Defendants did not provide the post-termination hearing within 48-hours of Plaintiff Ficca's March 23, 2020 termination notice. ECF No. 34 at 5. In making this argument Plaintiffs cite no authority supporting the proposition that a delay in one party's compliance excuses the other party's total lack of compliance. Still, even if Plaintiffs had legal authority supporting that proposition, then at most Defendants' delay in hosting a pre-termination hearing would excuse Plaintiff Ficca's absence at *that* hearing.

But in Plaintiff Ficca's final termination letter, the LCCC President explained that "should [Plaintiff] disagree with [the President's] decision, [his] final recourse would be to utilize the contested case procedure outline in the College's *Rule of Practice for a Contested Case.*" ECF No. 20-13. Plaintiff did not request a contested case hearing. ECF No. 24-28 at 150–52. Plaintiffs offer nothing by way of explaining why Plaintiff Ficca did not avail himself of the post-termination appeals process. And there is no evidence Defendants violated the LCCC procedures for the post-termination process.

For these reasons, the court finds that Plaintiff Ficca failed to exhaust his administrative remedies and does not meet any exceptions excusing that failure. So Plaintiff Ficca's failure to first exhaust his administrative remedies leaves Plaintiffs unable to obtain judicial relief here.

III.   **Progressive Disciplinary Policy**

Plaintiffs ask this court to find that LCCC as a matter of law had to employ each step of the disciplinary policy before terminating Plaintiff Ficca. ECF No. 20 at 21. By failing to do this, according to Plaintiffs, Defendants denied Plaintiff Ficca due process.  ECF No. 20 at 22 ("The Court must hold in this matter that the Plaintiff had a property interest in his employment such that due process was required and not afforded prior to his termination on March 23, 2020.").

In making this argument, Plaintiffs mischaracterize the evidence. They say that LCCC "had a specific progressive disciplinary schedule that required a verbal warning, a written warning and/or possible suspension prior to termination." ECF No. 34 at 7. Fair enough the disciplinary policy outlines "General Disciple Procedures" which include verbal warning, written warning, performance improvement plan, and suspension. ECF No. 20-5 at 3. But, despite Plaintiffs contentions otherwise, this policy does not require each of these steps be taken in that order before termination. ECF No. 20-5 at 5.

Instead, the policy contemplates instances in which—because of the need for immediate action—an employee may be suspended pending full termination. ECF No. 20-4 at 3 ("There may be performance, conduct, safety incidents or a punitive measure, where the most effective action may be the temporary removal of the employee from the work place. When immediate action is necessary, the immediate supervisor may place an employee on suspension."). The policy also states, "[d]iscipline may begin at *any stage* including termination depending on the nature of the infraction." ECF No. 20-4 at 2 (emphasis added). And on termination, "[i]f corrective and/or discipline actions are unsuccessful, or the problem or violation is so severe that corrective action is inappropriate or impractical, a supervisor may recommend termination of the employee from employment." ECF No. 20-4 at 4. Whether skipping certain steps was warranted

14

or whether certain corrective actions were inappropriate or impractical cannot be decided as a matter of law.

So this court cannot say, as a matter of law, that Defendants had to warn Plaintiff Ficca verbally and in writing before March 23, 2020. Nor can the court say that Defendants had to implement a performance improvement plan prior to that date. LCCC policy allows for discretion on what actions are appropriate and practical given the individual case. And so, no matter how wronged Plaintiff Ficca may feel, any assessments on what steps should have or could have been taken cannot be determined by this court as a matter of law at this time.[6] For that reason, this court cannot find, as a matter of law, that Defendants failed to follow mandatory disciplinary steps.

### CONCLUSION

For these reasons, it is **ORDERED** Plaintiffs' *Motion for Partial Summary Judgment*— ECF No. 19—is **DENIED**.

Dated this  10ᵗʰ day of March, 2022.

Alan B. Johnson
United States District Judge

---

[6] Plus, Plaintiff Ficca's failure to first exhaust his administrative remedies leaves Plaintiffs unable to obtain judicial relief on this issue.

15